Our final case this morning is Alexsam v. Aetna, 2022-2036. Mr. Richardson. Thank you and good morning. May it please the Court, the District Court for the District of Connecticut erred when it apparently applied its own heightened pleading standard and subsequently found that Alexsam had failed to plead a sufficiently plausible claim of patent infringement. Specifically, the District Court found at APPX-0028 that Alexsam had failed to articulate exactly how Aetna's use is infringing beyond its provisions of hardware and the use of a processing hub. The Court continued to find that the Second Amendment complaint lacks precise and clear detail as to allegedly infringing conduct. The level of specificity required by the District does not satisfy this Court's current standard. Applying the proper standard, which we believe is found in Botmate v. Sony Corp. of America, the allegations in Alexsam's Second Amendment complaint were sufficient to provide notice of plausible claims of patent infringement, which should have permitted Alexsam to proceed past the initial pleading stage. Specifically, at pages 1352-1353, the Botmate Court provides guidance regarding what is required to satisfy pleading standards. After first affirming that a patentee did not prove its case at the pleading stage and that a patentee is not required to plead infringement on an element-by-element basis, the Court provided a context-specific framework to determine what the required level of detail is for a given patent. The Botmate Court stated that the level of detail in any given case will vary depending upon a case. Second Amendment complaint is the operative complaint, correct? Yes. And in paragraph 141, you allege that Aetna Inc. is responsible for activation transactions, or at least some of them, over the MasterCard network. You now tell us that was a mistake to include that, but the District Court had an obligation, as do we, to take as true what you allege as a specific fact in your complaint. How can we now let you say that's a mistake? Your Honor, if we turn to, for example, the patent itself, reading the claims at issue, we can see that activation is not an element of the claim. It may not be an element of the claims, but you specifically allege as a factual matter that Aetna Inc. is responsible for activation transactions. I'm just asking you, we have to take that as true, do we not? That, yes, but it's not relevant to the issue of whether we properly claimed, asserted a claim, a plausible claim of patent infringement, because the patent infringement rests on the elements in 32 and 33, which do not include activation. But it's relevant to the license question, correct? It is. It has some relevance to the issue of the MasterCard license, yes. Because as I understand it, your argument is that the license only extends to the whole chain, a chain that includes an activation or an added value transaction, correct? That's what the license says. And so we have to take as true that Aetna Inc., at least some of the time, is responsible for activation transactions, as you specifically allege. Your Honor, I understand where you're getting is a clear typographical error from our perspective, and regrettable. However, it doesn't substitute the fact... It's more than a typographical error. It's a whole paragraph. Well, it's typographical in nature of the compilation of this particular complaint, including a passage that did not relate to this set of claims. But again, this doesn't substitute for the license itself. The license itself is the operative document that confers or does not confer the right. I'm interested in your view on the license. But before we move on to that, it does seem odd to call it a typographical error. Did you point out to the district court, this is a typographical error, we didn't mean to include this, or wasn't the court below, and us now obligated to take as true what you chose to put in your complaint that you filed in the court? Your Honor, I believe that it was raised in the transcript, although I do not have that immediately in my mind. But again, the nature of the claims here do not match up to the license. The license cannot cover these claims, even if, for the sake of argument, they were involved with activation of a card somewhere. We're not suing them on that. The license doesn't cover that. The specific claims cover a particular type of card that does not include activation. We could say that they've also launched a manned mission to the moon, as part of the general description. But the fact that they did that isn't relevant to the plausible claim of patent infringement here before your Honor, which relates only to 32 and 33. Whether you accept my characterization of it as a typographical error, or a compilational error, or whatever it is, it was an error that has no effect on determining whether the claims of 32 and 33 are covered by the license to MasterCard. Because those claims don't require it. That conduct doesn't require it. That license can't provide a shield to those claims. Can you talk about the termination of the license dispute? Because you say that you raised that as a factual question, and the district court didn't really address it. I want to make sure I understand your position. And has the termination question been argued to any court? Do you have any decisions on whether it terminated before the patent expired? Your Honor, there is no district court decision, nor any other decision yet on that. But I am duty bound to tell you that there was an appeal last month, of Alex Am versus MasterCard. I believe Judge Lori may have been involved in that panel. I believe that the issue of termination was discussed. I was not counsel on that appeal. And I do not know what the outcome of that is. But to answer your question, yes. The issue of the applicability under the license transaction was raised, as was the issue of termination. As we pointed out, there was a dispute, and is a dispute currently, that may not be resolved by the current appeal. As to whether the agreement terminated in 2013, as MasterCard argues, or 2015, as it argues in the alternative, which would both be before the date for accruing damages in this case. In which case, the MasterCard license would have no effect for that additional reason. And with respect to the activating transaction, just for the sake of the record, the key language is on the activating or adding value that we discussed is at APPX 0656. One of the reasons I'd like to talk a little bit about BOTMATE, though, is with respect to its impact on what needs to be proved. That is, what elements. We know that we're not pleading on an element-by-element basis. It does beg the question, well, what elements do we need to plead? And BOTMATE tells us. It tells us in a way that one of the courts, the Northern District of California, has described as a search for the critical elements. What are the critical elements? And here, the critical elements are the debit medical services card itself, which is shown in a variety of images, both in the infringement contentions attached to the complaint, as well as within the complaint, that shows the Aetna name, the Aetna brand, and the BIN that are required by Claim 32. The district court said that a lot of your allegations were just conclusory. What standard of review do we apply to that? The standard of review is a de novo review of the evidence that we submitted, Your Honor. So we decide for ourselves whether certain allegations you've made are conclusory. Yes, and in that regard, all of the evidence, I think, is marshaled well in our gray brief. But there are some things that deserve being highlighted. And that is, there are a number of... The key feature here is the process... Before I get to that, the key feature here is the processing hub in terms of pleading. We know from, even from the abstract of the patent itself, that this is the device that is coordinating all of the functions of the system. And we know from column four, it's described as the nerve center of the system. This is the device that you see at 32C and D as being involved with the accessing of two databases. But what do you say Aetna, Inc. had to do with that processing hub specifically? We allege that they are responsible for all aspects of it, including the creation and assembly of it. Responsible for is... They performed. They performed. So somebody who is an actual employee of Aetna, Inc. actually operates that processing hub. Is that your contention? That is our contention. And that's as expressed in the complaint. Aetna, Inc. is just a holding company and it doesn't actually have employees who are on the spot, on the job, operating that. Then you lose? Is that your... During the process of litigation, you frequently find whether parties, the actual roles of parties. We have strong evidence here that that assertion is not true. That they are not a mere holding company. What's your evidence that they're not? A, and B, why isn't that evidence in the complaint? It is. It's attached to the complaint, Your Honor. Okay. What is it that shows that Aetna, Inc. and its employees actually have a hands-on relationship to the infringing mechanism? Well, they are the final assembler of the entire system. What does that mean? Final assembler? They put it by installing the processing hub into the existing banking network. They have created the system. So there is an Aetna, Inc. employee who's actually installing something physically? We have the only entity that we have evidence of that has done anything relative to this. The primary one, at least, is Aetna, Inc. And that is attached to our complaint. And if I could direct you, beginning at APPX 0544, this is a document with the Aetna, Inc. registered trademark, which is registered to Aetna, Inc. says, Welcome to Aetna High Deductible HSA Plan Guide for 2017. And this is attached as Exhibit C to the Second Amendment Complaint. And if I could just briefly ask you to look at 0567. At that point, you will see that the creator of this, by virtue of the copyright, at least that's the plausible explanation, the creator of this document is Aetna, Inc. So this Aetna, Inc. has created this, at least plausibly, we can understand that they created this as the copyright owner. And within this, they provide some of the teachings and some of the advice to their customers, that they call members, about how to use this debit medical services card. And that's found at 0549. And someone on behalf of your client, knowing their Rule 11 obligations, has signed a complaint indicating that you're willing to go on the record as saying we have a plausible basis to believe that Aetna, Inc., the only party we sued, is directly responsible for all this activity. We have their fingerprints everywhere. We have a suggestion that at least one other entity may be implicated. But because of the nature of this system, the fact that Aetna, Inc., the parent company, may use other of its resources to infringe, does not mean that they're not liable. In fact, under the final... Well, use other of its resources. If by that you mean that a holding company can be liable for all of its subsidiaries' activities because it is using its subsidiaries' resources... No, Your Honor. That's not your theory. Not at all. Not at all. There is no evidence anywhere in the record that they are a mere holding company. In fact, the facts we're pointing to show the contrary. So the idea or the argument that they're a mere holding company is a response that they have from outside of the pleadings. We should be entitled to go against the party whose fingerprints are on this under Rule 11. And if it's determined that others are implicated, we may very well seek leave to add them. But fundamentally, this is a dispute right now between this party, Aetna, Inc., and Alexam, as to these particular claims, which are not covered by license or otherwise. And very briefly, if I could... Very briefly, because you're almost through your principal time. Your Honor, I'd like to save my remarks. Thank you very much. Mr. Roback. Good noon, Your Honors. It may have pleased the court. This is a case about Twombly and Iqbal and pleadings. All we have here is conclusory pleadings. In Twombly, it was, you can't make a deal with your competitors. And if that's all you allege, it's not enough. That's conclusory. In Iqbal, it was, well, you're the attorney general. You're the FBI director. There's mistreatment of a prisoner. You're responsible for that because you were animated by race discrimination or national origin discrimination. All they're doing is reciting the statute and saying, you're responsible. And the Supreme Court has held, you have to say more than that. But why is it not the case that, for example, at 478 of the appendix, paragraph 110, defendant employs staff, e.g. an IT department, to operate the processing hub in order to interface with, install, configure, manage, dot, dot, dot. Why isn't that an allegation of a fact, not simply an assertion of a conclusion? Your Honor, let me answer that question because that is, when we're talking about Edna Inc.'s fingerprints and they actually have people there, this is on information and belief, it's pled. And you can do that. But we don't know what the source of that information is. They're not required to give the source. But what we do know, on the record, is that the names of the Edna subsidiaries are listed within specific exhibits to their complaint. Edna is a brand name and you can find this. I'm not seeing how that's responsive to Judge Bryson's question. Is it conclusory? I have the same question. Is it conclusory to say that your client, Edna Inc., has employees who operate the processing hub? Is that conclusory? It's a bootstrap allegation and I'll tell you why. Is it conclusory? Because what they say is... Counsel, counsel, is it conclusory? It is conclusory. Because the reason they say it is, Edna owns and controls the entire system, quote, in order to provide the benefit of debit medical services cards to its customers. To its customers. There are no customers of Edna Inc. How do we know that? It's not in the complaint. And they wouldn't... We're limited to the plaintiff's attachment. And there you have artful pleading. Here they're not pleading that, but they were told, and there's no dispute about that, they were told early on in the case, Edna Inc. What case requires them to put in their complaint things that you tell them as the defendant? They're not required to put it in the complaint, but they're on notice. And when they went on notice, that's when they should look at their own exhibits, which say that Edna is a brand name for the insurance company subsidiaries. And it identifies them. Can you point to any direct contradiction of any point that's alleged in the complaint versus what's in the attachments to the complaint? You want us to see this as a direct contradiction and line it up with bot M8. I haven't seen the direct contradictions. Well, when you allege that this is the company that's doing everything and what business are they in? What is the product that Edna Inc. is selling? Is it the card? They identify other people who provide the card. Most of the cards, but not all of them. They identify the card. They identify companies that are administrators. They have specifically designated, for example, Johnson & Johnson and so forth, Payflex. One of the cards, at least, does not. It just says Edna. And it just says Edna. And it has a footnote that says Edna is a brand name for the subsidiaries that sell insurance products and services. That's connected with the card that just says Edna? Yes. Yep. Can you point me that? Because I didn't see that. There are several. I saw that at 572, there is a sentence at the bottom which talks about Edna being the brand name for products and services provided by one or more of the Edna group. Well, that's fine. That doesn't exclude, however, Edna participating in the acts of infringement by, for example, having employees. On appendix 572? That's what I just read. Edna is a brand name for the products and services. I was just reading that. OK. So we have that. But that doesn't say that Edna, Inc. isn't also participating in that. And that doesn't cover, by terms, all of the cards. Edna, Inc. is not an insurance company. It doesn't sell insurance products. So what product is it talking about? Are they talking about selling? We're not at an evidentiary phase. This is something that's a matter of public record. Public record, you mean if we went to the Connecticut Attorney, Secretary of State, we would find that it's not an insurance company. Edna, every document in this exhibit identifies the insurance companies that are involved. We assume that the product they're talking about is somehow related to this system. And the system is these cards that provide employees of group health programs a way of putting some money away from their salaries, tax-free, and then using it to pay the deductibles or for co-pays. That's something that the employers who have been identified provide to their employees. And that's in relation to insurance. Edna, Inc. is not the insurance company. The insurance companies are identified here. And so there's products and services for Edna are provided by these subsidiaries. When we told them, you've got the wrong party, they said, we're not going to amend. The judge said, you have till December 6. You can amend your complaint. You can add parties. And they amended their complaint to throw in the MasterCard license. But they did nothing. They did nothing to say, all right, we're going to include these subsidiaries. But nothing, I haven't seen you point to anything that requires them to do any of that. They're signing under possible penalties of Rule 11, possible malpractice or other disciplinary proceedings, a 285 motion if you win this case. But I don't see how Rule 12 allows you to deny well-pled non-conclusory factual allegations. They're not well-pled because they're contradicted by the evidence in their own exhibits. Well, I see inconsistencies or tensions. I don't see a direct contradiction. You need a direct contradiction, don't you? There are exhibits that list the insurance companies. Appendix 203, that's in their original complaint, 375. There's another one at 567. There's another one at 572. We've talked about that one. I'm sorry. I understand their allegations to be, it's not just insurance companies that are infringing our patent. It's also Aetna, Inc. Well, they're not saying that. They're saying Aetna, Inc. for some reason, you asked the question about the processing hub, the hub, the central part. Why is it plausible that this holding company is the one that has nothing to do with the insurance? It just owns these companies that are insurance companies. They don't agree that it's a holding company or not at least purely a holding company. There's nothing in the complaint that would lead us to be sure that that's right. And I also heard him say, well, after some discovery, we might want to add some of these companies. This is what Twombly was all about. You can't just unleash these companies to say, we're going to sue you. We've got nothing here. We have absolutely nothing. You tell us who the right parties are, and we're still not going to sue them. Let me ask you a question. Why in this case did you not move for a limited summary judgment based on discovery limited to this question of Aetna's role? You could have gotten out of this case a lot cheaper, it strikes me, had you been able to prove in a summary, in a narrow summary judgment motion targeted to that issue, that none of these allegations are true. If you're right as to Aetna, and you seem very confident that you are, and you may be, but that seems to me a lot cheaper than having to deal with the burdens of Rule 12b-6 and the constraints on your ability to introduce evidence, which is to say that you can't. Your Honor, if you look at the Iqbal case, they sued the Attorney General and the head of the FBI and said you're responsible for people in custody being treated. I'm just sort of curious why you didn't follow the what strikes me as the more sensible course of simply seeking a narrow targeted summary judgment notion directed exactly to this question. The narrow targeted discovery motion sounds wonderful. I've actually done it. It works. Your Honor, you may have actually been successful in cabining in that type of discovery. And cabining is the word used in Trombley. You don't even get to that ability to get that discovery. You don't have the right to that discovery until you've at least alleged more than a conclusory fashion. Because when they talk about that Aetna Inc. on information and belief has IT people to service the processing hub, to serve their customers, they're building on an assumption that they have customers, an assumption that they have to hire their own IT personnel to service that processing hub to serve customers that they don't have. But what can we look to to say that's just flat out wrong? You look at all the other allegations that they have and their exhibits that point you to and say, here are the parties. Every one of these cards, one of them says on the back of it, Aetna Life Insurance Company of El Paso, Texas. I was going to give you the site for that one. Yeah, several of the cards have designated, the Johnson and Johnson card, for example, designates somebody other than Aetna Inc. There was another one? One card that does not, as far as I can tell, limit itself in that way. There's not one of them says Aetna Inc. Not one of them. Not one. In all the exhibits they have, not one of them says Aetna Inc. When you get to the evidentiary phase, that's going to be a problem for them. Yeah, well, their hope then, and they said it out loud, is once we can get into discovery, maybe we'll find some others. Maybe we'll add them then. This is what the judge said. We were at that stage, the simplest thing. He said to them, you've been told, you want to add parties, do it now. They said, no, we're not going to add parties. We're not going to name these companies. Then they came back later and said, now that it's too late to amend, because the judge has to control his docket. He says, here's the time. You want to add parties? You want to amend your complaint? Do it now. It's later then. They said, we're not appealing that part. When they asked for reconsideration, that's when the judge said, look, it's too late. It's Rule 15. It's Rule 16. It's my inherent right to control the docket. You've missed it. Now they're saying, well, let us go ahead with this discovery. Hope we can get it limited then. They don't want it limited. They want to find out, what can we find out about these other parties? Do you agree with appellants that our standard of review of the district court's conclusions, that certain allegations are conclusory, is de novo? Do we decide that over for ourselves? You do, Your Honor. And this is something the Supreme Court, and the guidance for that, is not a technical patent analysis, because that's not an element of the claim. Customers, this is quintessential Twombly and Iqbal. This is saying, it's the FBI director? Well, what's the basis for that? So that's a de novo inquiry on appellants. It is, Your Honor. We don't defer in any way to the district court's conclusion that this was conclusive. I think you should defer. Well, it's de novo. We don't defer. It's de novo, Your Honor. It was well-reasoned. It makes sense. And if you look at the exhibits, you look at everything else in this case. And this is critical, Your Honor. You talk about trying to be efficient. This is not a game where we were hiding the ball. We came right out front and told them. Up front. They don't have to believe us. That's not evidence. But we told them, you've got the wrong party and the right parties are identified in your own exhibits. Payflex. You don't have to go to the exhibits. They're all over the complaint. They're all over the complaint. Look at that. It says, let me get this right here. That's right in the complaint. Paragraph 55 shows a picture of the Payflex MasterCard. No Aetna brand there. It says, defendant offers a Payflex card through its subsidiary, Payflex. Well, that's kind of a conclusory backhanded way of saying, well, we're going to get Aetna. Aetna does it through Payflex, its subsidiary. But it knows that Payflex is the one doing it. 469 in the appendix. Paragraph 55 works for it. www.payflex.com. Products and services. Payflex cards and video. It alleges providing Payflex's explanation of how Payflex card works. Paragraph 56 states, Aetna's Payflex provides information on its Payflex debit card. Exhibit D, they talk about their infringement analysis for Payflex. They switch from 32 and 33 claims, just to avoid the license to go down to, well, we're just going to allege 33. You put the medical numbers on this multifunction card. They're not talking about the processing hub there. They knew about these subsidiaries. They alleged in their complaint that Payflex is the one doing this. It's the Payflex. You've seen the picture of the Payflex MasterCard. That sure isn't Aetna, Inc. There's nothing there that's right in their own complaint. They don't have to go to an exhibit to see that. Counsel, do you want to conclude your argument? The time has expired. It does show that the card was administered by JP Morgan, Bank of America, other parties. MasterCard, much more of an interest in any of these things. We're talking about plausible. What's plausible? Look at all the other parties that are involved and the real interest that is shown through their exhibits and their allegations. And nothing there points to Aetna, Inc. Thank you, Your Honor. Mr. Richardson, take three minutes if you need it. Thank you, Your Honor. I'm going to try to respond to just four particular points unless you have any questions. First, with respect to the issue about customers, I'm not sure if that's truly something that is of interest to the court. But at 560 of the appendix, we see the customers referred to as Aetna members. And again, this is in the document that was plausibly authored by Aetna, Inc. I'd also like to briefly note, I don't want to disagree with my friend, but we were actually never allowed to amend. There was, I think, the suggestion that the judge said, you can go ahead and amend. We were never granted leave to amend. After the dismissal, all we were granted was the opportunity to move for leave to amend, which, of course, shifts the burden to us under Rule 16 as opposed to under the more liberal interpretations of 15. If you were to get a remand in this case, reverse the dismissal, would you agree to a targeted summary judgment proceeding in which the discovery is limited just to the question of Aetna, Inc.'s involvement in these infringements? Your Honor, no. And the reason is, is that there was outstanding discovery. The suggestion from my colleague was that we sat idly, and that's not true. We sought information- I want to get this resolved, because this question could be- We do. Case dispositive. Here's my concern. We see a lot of cases in which the parties are filing and hoping that their opposing counsel will have to spend so much money getting to summary judgment, and getting to summary judgment can be extraordinarily expensive, that they say, there's a lot of room here to extract settlements. So I'm looking for something that the parties, if we send it back, that the parties will be able to resolve this question in a much more efficient way than motions to dismiss might be, which is to say, let's look at what evidence there is. Is it enough to say Aetna, Inc. is conceivably responsible for these infringements? Why not agree to that? The reason simply is, is that there is a procedure in every case that you're asking me to disadvantage myself by not taking advantage of. What's the disadvantage? The disadvantage is, we were initially heard about the possibility of there being others implicated in the 26F motion, which was about six weeks before the time to amend expired. We immediately served discovery. There has been the appearance of ball hiding here, and you're asking me to agree to something that in any other case, I would be allowed to say to the judge, I would be happy to discuss under whatever the judge's rules are, whether that's a single summary judgment motion or where other serial motions are allowed, I'd be happy to be willing to discuss this, but they wouldn't have to bring a summary judgment motion if I knew they weren't the proper party and I knew who the proper party was, because there is one there, and right now it's Aetna, Inc., and that's what the document says, and I really appreciate the idea of getting to the heart of this. That's our job, too, and I hope you don't think that we are a firm or a group of lawyers that are looking for a stick-up to try to drive a... It may not be, but there are such activities out there. Not at our table. We have to watch out for it, and one way to watch out for it is to get quick resolution of threshold questions. Well, I know the District of Delaware had some wonderful procedures that allow for this sort of accelerated. I just don't think this is something that's available in the District of Connecticut, and because we haven't been able to get these answers and there has been at least the appearance of a desire not to be forthcoming, that is something that we need to get to the bottom of, but I can assure you that if we know that they are the wrong people, they won't need to bring a summary judgment motion. Thank you, counsel. We have both arguments. The case is submitted. And that concludes today's arguments.